UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NEXT Payment Solutions, Inc.,

       Plaintiff,

    v.

CLEAResult Consulting, Inc.,

       Defendant.

Case No. 17 CV 8829

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR**

**<u>PARTIAL SUMMARY JUDGMENT</u>**

**REDACTED VERSION**

**INTRODUCTION**

NEXT is wrong about the Court's prior summary judgment ruling and its subsequent related orders, wrong about the legal standard for software features as trade secrets in the Seventh Circuit, wrong about its own trade secret description, and wrong about the relevance of CLEAResult's experience with the FAST Tool. As the Seventh Circuit has stated many times, summary judgment is the "put up or shut up" moment in litigation when the parties are required to show that they have sufficient evidence to allow a reasonable jury to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010). Even after several opportunities, NEXT has failed to "put up" by identifying concrete trade secrets as required by the Seventh Circuit. Thus, NEXT's claims arising from its trade secrets must be dismissed because "unless the plaintiff engages in a serious effort to pin down the secrets a court cannot do its job." *IDX Sys. Corp. v. Epic Sys. Corp.,* 285 F.3d 581, 583 (7th Cir. 2002).

**ARGUMENT**

**I.      NEXT (still) has the burden of identifying concrete trade secrets for the jury.**

The parties agree that the issue before the Court is whether NEXT "has sufficiently identified any trade secrets." (Opp'n, Dkt. No. 356, at 4-5.) The parties also agree that to survive summary judgment, NEXT "must show concrete secrets" and identify those trade secrets with "sufficient specificity." *GlobalTap LLC v. Elkay Mfg. Co.*, No. 13 C 632, 2015 WL 94235, at *5-6 (N.D. Ill. Jan. 5, 2015).

As an initial matter, NEXT misconstrues the Court's previous summary judgment order by stating that the Court denied CLEAResult's motion on whether NEXT had sufficiently identified its trade secrets. (Opp'n at 3.) In contrast to NEXT's characterization, the Court applied the standards in *IDX Systems* and *GlobalTap* to hold that NEXT had <u>not</u> sufficiently identified its trade secrets because the descriptions were "too broad and generalized." (Dkt. No.

1

285 at 51.) Accordingly, the Court granted summary judgment in CLEAResult's favor "on any DTSA claim based on the broad categories of information referenced above that merely describe [NEXT's] software in broad and generalized terms." (*Id.* at 52.) The Court went on to explain that NEXT *may* have triable trade secrets to the extent NEXT sufficiently identifies "features of the FAST Tool that were not part of DSMTracker." (*Id.*) In other words, the Court hypothesized that NEXT might be able to identify concrete trade secrets and specifically that "[t]he Court and a jury *would* be able to analyze whether [CLEAResult] misappropriated specific features that were in the FAST Tool but missing from DSMTracker and later added to DSMTracker after [CLEAResult] accessed the NEXT System Back End." (*Id.* at 53 (emphasis added).)

The Court's summary judgment ruling on NEXT's identification of trade secrets is consistent with its order a month later granting CLEAResult's motion to compel NEXT's identification of trade secrets. (Dkt. No. 296.) In that order, the Court held: "Consistent with the Court's summary judgment decision finding that [NEXT's] description of its trade secrets is too broad to support [its] claim for misappropriation of trade secrets, [NEXT] is ordered to supplement its response." (*Id.*) Accordingly, NEXT's third attempt to concretely identify its alleged trade secrets is ripe for decision on this motion for partial summary judgment. *See IDX Sys. Corp.*, 285 F.3d at 584 (holding a plaintiff must "separate the trade secrets from the other information that goes into any software package," including any aspects already known to the trade); *GlobalTap LLC*, 2015 WL 94235, at *5 (holding a plaintiff "must do more than simply persist in the blunderbuss statement that 'Everything you got from us was a trade secret'").

II.     **NEXT's description of the FAST Tool's software features does not meet the Seventh Circuit standard for specificity of trade secrets.**

NEXT and CLEAResult fundamentally disagree about the standard for trade secret protection of software features in the Seventh Circuit. NEXT argues that it met its burden by

2

identifying the FAST Tool's 34 modules (plus its new combination modules) as "specific software features of the FAST Tool that the DSMTracker did not have." (Opp'n at 4.) But CLEAResult's technical expert, Dr. Michael Shamos, explains that " ████████████ ██████████████████████████████████ (Expert Report of Dr. Michael Shamos, Dkt. No. 341 ¶ 50.) Dr. Shamos explains that by reviewing the descriptions of the 34 modules, ██████████████████████████████████████████. (*Id.* ¶¶ 50-51.) In other words, by identifying 34 modules, NEXT has ████████████████ ████████████████████████████████ (*Id.* ¶ 51).[1] That is insufficient. And as described below, NEXT's trade secret description also fails because NEXT merely describes what the FAST Tool features do but not how the features work.

**A. The Seventh Circuit requires a trade secret plaintiff to identify both the software feature and how the feature works.**

In its opposition, NEXT asserts that its description of the specific features of the FAST Tool—without more—is sufficient to concretely identify its trade secrets. (Opp'n at 4-9.) NEXT is wrong. To sufficiently identify a software feature as a trade secret, NEXT must identify: (1) the software feature or functionality itself; and (2) the "means devised by [NEXT] to provide the [] functionalities." *IDX Sys. Corp. v. Epic Sys. Corp.*, 165 F. Supp. 2d 812, 817–18 (W.D. Wis. 2001) (aff'd in relevant part). Without disclosing how a software feature works—e.g. by specific lines of code, certain rules, or algorithms—it is not possible for the Court, a jury, or CLEAResult to know what exactly about the feature makes it a trade secret. CLEAResult would not be able, for example, to show a jury that comparable DSMTracker features work differently (e.g. uses

---

[1] NEXT provides no rebuttal to Dr. Shamos's opinion because it cannot. NEXT's own expert, Dr. Valerdi, agreed that NEXT's prior descriptions of its trade secrets are only ████████ ██████████████████████████████ (Dkt. No. 336, SUF ¶ 25; Dkt. No. 198-14, Ex. 56 at 175:2-175:13, 184:3-185:4, 187:1-188:1.)

different code, rules, or algorithms) than the FAST Tool. Accordingly, courts routinely find trade secret identification deficient on summary judgment where plaintiffs identify software features and functions without disclosing how the feature or functions work.

The district court's reasoning in the *IDX* case—affirmed by the Seventh Circuit—is particularly instructive here. On summary judgment, the district court noted that "[p]laintiff has pointed to nine features of its product, not trade secrets themselves, and asserted that their existence is the result of trade secrets." *IDX Sys.*, 165 F. Supp. 2d at 817. In holding that "this is insufficient," the court explained that while the plaintiff "succeeds only in describing the functionalities, specific abilities and benefits they provide [plaintiff's] customers" it failed to identify "any specific concepts, designs, methods or processes underlying the functionalities." *Id.* at 817–18. Specifically, plaintiff "designates nine functionalities as trade secret areas but fails to identify any trade secrets. The document *does not identify any means devised by [plaintiff] to provide the nine functionalities*." *Id.* (emphasis added). Moreover, the court explained, "[b]eyond narrowing the areas of the product in which to look, there is no clue as to the substantive content of trade secret information. [Plaintiff] fails to clarify that actual information to be protected or even that number of trade secrets which are at issue." *Id.* The Seventh Circuit rejected the plaintiff's argument that its "43–page description of the methods and processes underlying and the inter-relationships among various features making up [its] 'software package' is specific enough," holding "No, it isn't." *IDX Sys.*, 285 F.3d at 583; *see also XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 09-157-RGA, 2013 WL 867640, at *3 (D. Del. Mar. 8, 2013) (finding trade secret description insufficient where description of software methodology implementing "features, functions, and characteristics of the design and operation" simply characterized the underlying design and not the information therein or related source code). Conversely, courts have found

4

trade secret identification sufficient where plaintiffs identify how a software feature works by providing supporting tangible information along with the claimed feature, including the underlying source code. *See, e.g., Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427, 2012 WL 74319, at *16 (N.D. Ill. Jan. 10, 2012) (finding plaintiff sufficiently identified information as its trade secrets by providing "[t]he architecture of the seamless mobility system," "source-code files and artifacts," and "product roadmaps and other development documents").

In its opposition, NEXT relies heavily on *Do It Best Corp. v Passport Software, Inc.*, No. 01 C 7674, 2005 WL 743083 (N.D. Ill. Mar. 31, 2005), for the proposition that identifying "software features" of the FAST Tool that DSMTracker did not have "are specific enough trade secrets to survive summary judgment." (Opp'n at 4.) NEXT is wrong.

In *Do it Best*, the counterclaimant, a software reseller, developed and modified business software for its customers, including the counter-defendant, a hardware co-op. 2005 WL 743083 at *2. After the parties' relationship ended, the reseller alleged that the co-op misappropriated the reseller's trade secrets by continuing to use the previously licensed software. *Id*. In response to an initial interrogatory, the reseller claimed its trade secrets were "the processes and methodologies encompassed in" 40 features of the licensed software. *Id*. at *12 (internal quotations omitted). In a supplemental interrogatory answer, it reduced its claimed trade secrets to 28 features, but also furnished 831 pages of source code as its protected material. *Id*. Additionally, the reseller testified that its trade secrets include the design, structure, programming methods, and integration of that code into the body of code. *Id*. At summary judgment, the co-op argued that the reseller's trade secret description was too broad and lacked the specificity required under *IDX Systems*. *Id*. at 13.

///

5

The court explained that the reseller's description of its alleged trade secrets "come[s] dangerously close" to what the *IDX Systems* court had explicitly rejected: "just identify[ing] a kind of technology and then invit[ing] the court to hunt through the details in search of items meeting the statutory definition." *Id.* The court, however, denied summary judgment because the reseller identified specific lines of code <u>and</u> specific software features, so it distinguished itself from other cases where plaintiffs were unable to identify any "computer printouts, formulae, memoranda, or any other technical data" identifying its trade secrets, or show "how, when and by whom" its purported trade secrets were developed. *Id*. Thus, *Do it Best* is consistent with the *IDX Systems* cases in finding that a trade secret plaintiff cannot just identify a software feature, it must also point to the specific underlying information showing the means by which the software feature is a trade secret—i.e. the source code the reseller identified.

**B. NEXT's description of the FAST Tool's software features fails because it only describes what the software features do and not how they do it.**

Here, NEXT does not concretely identify the information it claims are trade secrets as required under the *IDX Systems* cases and *Do it Best* because the 34 modules identified by NEXT merely describe the numerous features of the FAST Tool (i.e. what it does) without disclosing any source code or the means devised by NEXT to provide the functionalities (i.e. how it does it). NEXT has failed to identify any operating procedures, manuals, process standards, drawings, specifications, formulations, or other information that would permit a trier of fact to determine how any of the 153 software features identified by NEXT actually work. Instead, "[b]y specifying its trade secrets only as 'concepts, designs, methods and processes' [NEXT] is simply regurgitating the statutory definition of trade secrets." *IDX Sys.*, 165 F. Supp. at 818.

NEXT contends that its "trade secret identification describes how each software feature operates and the function it performs and identifies the other modules with which it interfaces."

6

(Opp'n at 4.) NEXT also claims that it describes "what the rules are and how each module must interact with other modules in order to service this specific industry." (*Id.* at 7.) NEXT is wrong. NEXT's identification of 153 features of the FAST Tool does not describe *how* the features operate and instead merely describes *what* they do. NEXT does not disclose any rules of the FAST Tool, it merely states that the FAST Tool has rules. More importantly, CLEAResult could not have learned the rules in the FAST Tool, or the interaction structure of the modules because the parties agree CLEAResult never had any access to NEXT's source code. (Dkt. No. 358 ¶ 26.)

For example, on pages 8-9 of its Opposition, NEXT provides bullet point descriptions of two of its alleged trade secrets ███████████████████████████████ and claims that it has disclosed "precisely *how* the specific software feature functions." (Opp'n at 8–9.) Specifically, NEXT's contention—that its description of its ████████████ ██████ shows the "secret way in which the software functions" in the Back End—is wrong. As demonstrated below, NEXT merely states what its ███████████████████ does, and nothing about how the features work:

| NEXT's Description of the FAST Tool's Online Self-Scheduling Module | Why NEXT's Description is Deficient |
|---|---|
| ████████████████████ : | ████████████████████████████████ █ |
| ██████████████ ███████████████ | ████████████████████████ █████████ ████████████ |
| ██████████████ ████ | █████████████████████ ████████████ ████████████████████████ |

| NEXT's Description of the FAST Tool's Online Self-Scheduling Module | Why NEXT's Description is Deficient |
|---|---|
|  | |

With respect to its alleged ████████████████ NEXT again claims it "discloses

the secret way in which the software functions," but its description of the module does not do so:

///

8

Case: 1:17-cv-08829 Document #: 378 Filed: 07/05/19 Page 10 of 18 PageID #:11855

| NEXT's Description of the FAST Tool's Combination B Module | Why NEXT's Description is Deficient |
|---|---|



9



(Opp'n at 8-9.)[2] Thus, contrary to its assertions otherwise, NEXT's description of its alleged trade secrets fails because it only describes what the FAST Tool's software features do and not how they do it, contrary to the Seventh Circuit standard.

### III. NEXT has not differentiated between the generic and public aspects of the FAST Tool and actual trade secrets.

NEXT's trade secret identification is also impermissibly vague because it fails to differentiate between generic and non-generic features of the FAST Tool, as well as its public and non-public features. A trade secret "description must be specific enough to allow the meaningful comparison of the putative trade secret with information that is generally known and ascertainable in the relevant field or industry." *IDX Sys.*, 165 F. Supp. 2d at 817. Here, NEXT contends— without any factual support—that it differentiates between generic or public information and thus its trade secret description is sufficiently concrete. NEXT is wrong.

Specifically, NEXT claims that its trade secrets "are not 'generic' features of any software program but instead are carefully tailored features with specific, secret information." (Opp'n at 7.) A cursory review of NEXT's trade secret identification, however, reveals numerous features of

---

[2] NEXT's other trade secrets suffer from the same deficiencies. While NEXT attempts to avoid summary judgment because CLEAResult did not specifically address each trade secret in its opening brief, NEXT cannot survive summary judgment simply by flooding CLEAResult and the Court with a laundry list of generic software functionalities and then criticize CLEAResult for not fully analyzing each within its fifteen page limit.

the FAST Tool that exist in countless software programs. For example, NEXT includes in its

trade secret identification:



).[3]

These examples underscore how vaguely NEXT describes its purported trade secrets. Like in *IDX*

*Systems*, NEXT's identification fails because "it does not separate the trade secrets from the other

information that goes into any software package. Which aspects are known to the trade, and

which are not? That's vital under the statutory definition." *IDX Sys.*, 285 F.3d at 584.

NEXT also asserts—without factual support—that its trade secret identification is

sufficient because it "expressly *excludes* the public, customer-facing portions of its software from

its trade secrets that were so problematic in *IDX*." (Opp'n at 10.) NEXT is wrong. For example,

NEXT admits that the FAST Tool's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(Dkt. No. 358 ¶ 14.) In scheduling online appointments, the public would be able to infer from the

---

[3] Module name, number, features, and functionalities are from NEXT's identification of trade secrets. (Dkt. No. 307-2.)

webpage the existence of the *same* features of the FAST Tool ███████████████

███████████████████████████████████ that NEXT claims are trade secrets.

Similarly, NEXT claims that its trade secrets in ██████████████████████████

████████████████████████████████████████████████████████████████

███████ (Dkt. No. 307-2 at 7 (emphasis added).) It is impossible to determine from NEXT's

disclosure how the ████████████████████████████████████████ are

information NEXT excluded from its trade secret identification. NEXT also does not explain

(because it cannot) how it can claim its software features are nonpublic when NEXT disclosed the

features of the FAST Tool that it now claims as trade secrets on a public website. (*See, e.g.*,

Uhlenhake Decl., Dkt. No. 193, Exs. 1 & 2.)

Additionally, NEXT's contention that it excluded "customer-facing" portions of the FAST

Tool from its trade secret identification ignores the fact that *CLEAResult was NEXT's customer*.

Just like in *IDX Systems*, CLEAResult merely viewed the features of the FAST Tool on computer

screens and never had *any other* access to NEXT's alleged trade secrets. (*See, e.g.*, Dkt. No. 358 ¶

26.) Thus, for the same reasons articulated in *IDX Systems*, NEXT's trade secret identification

fails here. *IDX Sys.*, 285 F.3d at 584 ("What is more, many of the items that appear in the 43–

page description, such as the appearance of data-entry screens, are exceedingly hard to call trade

secrets: things that any user or passer-by sees at a glance are 'readily ascertainable by proper

means . . . and a trade-secret claim based on readily observable material is a bust.").

## IV. CLEAResult's familiarity with the FAST Tool is irrelevant to whether NEXT has sufficiently identified a trade secret.

NEXT cannot establish a legally sufficient trade secret by relying on scattershot evidence

that at most is relevant only to alleged misappropriation. Before ever reaching the fact-intensive

issue of whether CLEAResult misappropriated anything, the Court must first find that NEXT has

12

a legally sufficient trade secret. *See, e.g.*, *Lynchval Sys. Inc. v. Chicago Consulting Actuaries, Inc.*, No. 95 C 1490, 1998 WL 151814, at *5 (N.D. Ill. Mar. 27, 1998) (holding that trade secret claims require a "two step analysis" where the plaintiff "bears the initial burden of producing evidence that it possessed a trade secret" before analyzing misappropriation, and rejecting trade secret plaintiff's "anomalous litigation strategy of accusing the defendants of theft without first establishing that the stolen objects in question . . . exist and . . . are capable of being stolen").

NEXT provides no support—legally or factually—to support its argument that NEXT must have trade secrets because CLEAResult supposedly "analyze[d] the core features and functionality of NEXT's [FAST Tool]." (Opp'n at 1.) NEXT's argument that CLEAResult's access to, or understanding of, the FAST Tool demonstrates that NEXT sufficiently identified its trade secrets is contrary to the relevant case law. In numerous cases in the Seventh Circuit, courts have found that a plaintiff has not sufficiently identified a software-related trade secret even when the defendant had regular access to the software. *See, e.g.*, *IDX Sys.*, 285 F.3d at 584 (affirming summary judgment where software provider failed to adequately identify allegedly misappropriated trade secrets even though the defendant had access to "details that ordinary users of the software could observe"); *Lands' End, Inc. v. Genesys Software Sys., Inc.*, No. 13-CV-38-BBC, 2014 WL 266630, at *4 (W.D. Wis. Jan. 24, 2014) (rejecting alleged trade secrets on summary judgment as lacking specificity even when the defendant had used the plaintiff's software under a licensing agreement for 20 years). In addition, the DTSA specifically provides that "reverse engineering," on its own, does not violate the DTSA. 18 U.S.C. § 1839(6)(B).

Accordingly, a party's analysis of another's product does not indicate that a trade secret exists; otherwise it would eviscerate a plaintiff's threshold burden of identifying its trade secret. This is especially true here where CLEAResult has a legitimate claim of ownership of the FAST

13

Tool based on both the parties' contract and CLEAResult's significant role in developing the FAST Tool in the first place. (*See* Dkt. No. 197 at 18-19; Dkt. No. 198-7, Armstrong Decl., Ex. 41 ███████████████████████████████████████████████████████

██████████ The fact that CLEAResult employees who were instrumental in the development of the FAST Tool understand the functionality and features of the FAST Tool—because they used the program for years—does not support NEXT's argument that it has met its burden to identify its trade secrets in concrete terms. Similarly, NEXT's argument that CLEAResult's alleged access and "copying" of the FAST Tool somehow establishes that NEXT sufficiently identified its trade secrets should be rejected. Thus, the Court should wholly disregard NEXT's arguments that CLEAResult's alleged analysis or understanding of the FAST Tool, or any similarities between the FAST Tool and DSMT, are evidence of a NEXT trade secret in the first instance.

What CLEAResult (let alone any potential juror) does not, and cannot, understand based on NEXT's trade secret identification to date is _how_, or said another way, _what about_ the features that NEXT has repeatedly described are trade secrets. Regardless of what CLEAResult looked at or did not look at in the FAST Tool, or how well CLEAResult understood the FAST Tool, NEXT still must specifically disclose the means by which the features of the FAST Tool are trade secrets. NEXT has failed to meet its burden and summary judgment should be granted in favor of CLEAResult on NEXT's trade secret allegations.

## V. The Court should strike NEXT's additional facts and fact responses that violate Local Rule 56.1

NEXT's additional "material facts" and responses to CLEAResult's facts violate Federal Rule of Civil Procedure 56(c) and Local Rule 56.1. The Seventh Circuit "regularly upholds strict enforcement of Local Rule 56.1." *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000).

14

Specifically, NEXT improperly disputes paragraphs 14, 19, and 24 of CLEAResult's statement of facts (Dkt. No. 358) without citing evidence that supports its denials. As such, this Court should disregard those responses and deem CLEAResult's factual allegations as admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C); *Malec*, 191 F.R.D. at 584 ("[A] general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial.").

Additionally, NEXT's SAF Nos. 1-3, 6, and 8-15 should be stricken because they are not limited to "material facts" relevant to the outcome of CLEAResult's partial motion for summary judgment. Specifically, those facts are immaterial to the instant motion because they are directed to the separate and distinct issue of whether there has been any misappropriation—an issue the Court and jury will address only if NEXT can meet its burden in sufficiently identifying its trade secrets. SAF Nos. 6 and 8-12 are also improper legal conclusions. NEXT's failure to comply with Local Rule 56.1 by relying on immaterial additional facts and legal conclusions requires those facts be disregarded by the Court. *See De v. City of Chicago*, 912 F. Supp. 2d 709, 712 (N.D. Ill. 2012) (striking immaterial statement of facts for failure to abide by LR 56.1).

NEXT also failed to file Exhibits 3-11 via the Court's electronic filing system, and failed to authenticate any of the exhibits attached to its opposition. Accordingly, the Court should strike Exhibits 1-75. *See* Fed. R. Civ. P. 56; *Contreras v. Control Res. Corp.,* 680 F. Supp. 289, 292 (N.D. Ill. 1988).

## CONCLUSION

For all the above reasons, the Court should grant CLEAResult's motion for partial summary judgment on NEXT's claim for misappropriation under the DTSA and prohibit NEXT from offering any evidence or argument at trial regarding its alleged trade secrets.

Dated: July 5, 2019

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: *s/ J. Matthew Donohue*
    J. Matthew Donohue (admitted *pro hac vice*)
    Matt.Donohue@hklaw.com
    Shannon Armstrong (admitted *pro hac vice*)
    Shannon.Armstrong@hklaw.com
    2300 U.S. Bancorp Tower
    111 S.W. Fifth Avenue
    Portland, OR 97204
    Tel: (503) 243-2300
    Fax: (503) 241-8014

    Anthony J. Fuga (#6301658)
    Anthony.Fuga@hklaw.com
    150 N. Riverside Plaza, Suite 2700
    Chicago, IL 60606
    Tel: (312) 715-5771
    Fax: (312) 578-6666

    Attorneys for Defendant
    CLEAResult Consulting Inc.

16

CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT to be served on the following person[s]:

Devan V. Padmanabhan
Michelle E. Dawson
Britta S. Loftus
Paul J. Robbennolt
Erin O. Dungan
Sri K. Sankaran
45 South 7th Street, Suite 2315
Minneapolis, Minnesota 55402
Telephone: (612) 444-3377
Facsimile: (612) 444-3195
devan@paddalawgroup.com
michelle@paddalawgroup.com
britta@paddalawgroup.com
paul@paddalawgroup.com
erin@paddalawgroup.com
sri@paddalawgroup.com

Paul B. Thanasides
Mary Ruth Thanasides
McIntyre Thanasides Bringgold Elliott
Grimaldi Guito & Matthews, P.A.
500 E. Kennedy Blvd., Suite 200
Tampa, FL 33602
(813) 223-0000
paul@mcintyrefirm.com

Bartholomew B. Torvik
Torvik Law LLC
701 Main St. #204
Evanston, IL 60202
bart.torvik@torviklaw.com

by the following indicated method or methods:

☑       by CM/ECF electronically mailed notice from the Court on the date set forth below.

DATED July 5, 2019.

*s/ J. Matthew Donohue*
J. Matthew Donohue

1